ROBERT D. BEUCLER 005224
PHILLIPS & ASSOCIATES
20 EAST THOMAS ROAD, 26TH FLOOR
PHOENIX, AZ 85012

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA - PHOENIX DIVISION

In re
EARL R. RINGLEY
JESSIE L. RINGLEY

SSN xxx-xx-7690    SSN xxx-xx-6930
12666 N. 150TH LANE.
Surprise, AZ 85379

Debtor(s).

Case No. 2:10-bk-39484-RJH

CHAPTER 13 PLAN AND APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

☒ Original
☐ Amended
☐ Modified

☐ Plan payments include post-petition mortgage payments

This Plan may affect creditor rights. **If you object to the treatment of your claim as proposed in this Plan, you must file a written objection by the deadline set forth in a Notice of Date to File Objections to Plan served on parties in interest. If this is a joint case, then "Debtor" means both Debtors.** This plan does not allow claims or affect the timeliness of any claim. To receive payment on your claim, you must file a proof of claim with the Bankruptcy Court, even if this Plan provides for your debt. The applicable deadlines to file a proof of claim were specified in the Notice of Commencement of Case. Except as provided in § 1323(c), a creditor who disagrees with the proposed treatment of its debt in this Plan must timely file an objection to the Plan.

If this is an Amended or Modified Plan, the reasons for filing this Amended or Modified Plan are:

(A) **Plan Payments and Property to be Submitted to the Plan.**

    (1) Plan payments start on **JANUARY 10, 2011** . The Debtor shall pay the Trustee as follows:

        $ **645.00** each month for month **1** through month **60** . (JANUARY 2011 THROUGH DECEMBER 2016)

    The proposed plan duration is **60** months. The applicable commitment period is **60** months. Section 1325(b)(4).

    (2) In addition to the plan payments, Debtor will submit the following property to the Trustee: **-NONE-**

(B) **Trustee's Percentage Fee.** Pursuant to 28 U.S.C. § 586(e), the Trustee may collect the percentage fee from all payments and property received, not to exceed 10%.

(C) **Treatment of Administrative Expenses, Post-Petition Mortgage Payments and Claims.** Except adequate protection payments under (C)(1), post-petition mortgage payments under (C)(4), or as otherwise ordered by the Court, the Trustee will make disbursements to creditors after the Court confirms this Plan. Unless otherwise provided in Section (J), disbursements by the Trustee shall be pro rata by class (except adequate protection payments) and made in the following order:

  (1) *Adequate protection payments.* Section 1326(a)(1)(C) requires adequate protection payments to be made to creditors secured by personal property. Pursuant to Local Bankruptcy Rule 2084-6, the Trustee is authorized to make preconfirmation adequate protection payments to the certain secured creditors without a Court order, provided the claim is properly listed on Schedule D, the creditor files a secured proof of claim that includes documentation evidencing a perfected security agreement, and the debtor or creditor sends a letter to the Trustee requesting payment of preconfirmation adequate protection payments. The Trustee will apply adequate protection payments to the creditor's secured claim. After confirmation, unless the Court orders otherwise, adequate protection payments will continue in the same amount until claims to be paid before these claimants are paid in full, unless the confirmed plan or a court order specifies a different amount. **If a secured creditor disagrees with the amount of the proposed adequate protection payments or the plan fails to provide for such payments, the creditor may file an objection to confirmation of this plan, file a motion pursuant to §§ 362, 363, or do both.**

| Creditor | Property Description | Monthly Amount |
|---|---|---|
| HARLEY DAVIDSON | 2005 HARLEY DAVIDSON FXSTI (SOFTTAIL) MILEAGE: 40,000 | 55.00 |

☐ See Section (J), Varying Provisions.

  (2) *Administrative expenses.* Section 507(a)(2).

  (a) Attorney fees. Debtor's attorney received $ **4,000.00** before filing. The balance of $ **0.00** or an amount approved by the Court upon application shall be paid by the Trustee. See Section (F) for any fee application.

  (b) Other Administrative Expenses. [Describe]

☐ See Section (J), Varying Provisions.

  (3) *Leases and Unexpired Executory Contracts.* Pursuant to § 1322(b), the Debtor assumes or rejects the following lease or unexpired executory contract. For a lease or executory contract with an arrearage to cure, the arrearage will be cured in the plan payments with regular monthly payments to be paid direct by the Debtor. The arrearage amount to be adjusted to the amount in the creditor's allowed proof of claim.

  (a) Assumed:

| Creditor & Property Description | Estimated Arrearage Amount | Arrearage Through Date |
|---|---|---|
| VERIZON CELLULAR PHONE CONTRACT | 0.00 | N/A |

  (b) Rejected:

| Creditor | Property Description |
|---|---|
| -NONE- | |

☐ See Section (J), Varying Provisions.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com     Best Case Bankruptcy

(4) *Claims Secured Solely by Security Interest in Real Property*. A creditor identified in this paragraph may mail the Debtor all correspondence, notices, statements, payment coupons, escrow notices, and default notices concerning any change to the monthly payment or interest rate without such being a violation of the automatic stay. Unless stated below, Debtor is to pay post-petition payments direct to the creditor and prepetition arrearages shall be cured through the Trustee. No interest will be paid on the prepetition arrearage or debt unless otherwise stated. The arrearage amount is to be adjusted to the amount in the creditor's allowed proof of claim. Except as provided in Local Bankruptcy Rule 2084-23, if a creditor gets unconditional stay relief the actual cure amount to be paid shall be adjusted by the Trustee pursuant to the creditor's *allowed* proof of claim. If the Debtor is surrendering an interest in real property, such provision is in paragraph (E). The Debtor is retaining real property and provides for each such debt as follows:

| Creditor/Servicing Agent & Property Description | Collateral Value & Valuation Method | Post-Petition Mortgage Payments | Estimated Arrearage | Arrearage Through Date |
|---|---|---|---|---|
| CHASE<br>SINGLE FAMILY RESIDENCE:<br>Location: 12666 N. 150TH LANE, Surprise AZ 85379 | 151,000.00<br>LICENSED REAL ESTATE APPRAISAL | 1,455.00<br>☒ Debtor will pay direct to creditor; or<br>☐ Included in Plan payment. Trustee will pay creditor. | 3,000.00 | DECEMBER 9, 2010 |
| RANCHO GABRIELA HOMOWNERS ASSOCIATION<br>SINGLE FAMILY RESIDENCE:<br>Location: 12666 N. 150TH LANE, Surprise AZ 85379 | 151,000.00<br>LICENSED REAL ESTATE APPRAISAL | 50.00<br>☒ Debtor will pay direct to creditor; or<br>☐ Included in Plan payment. Trustee will pay creditor. | 0.00 | DECEMBER 9, 2010 |

☒ See Section (J), Varying Provisions.

(5) *Claims Secured by Personal Property or a Combination of Real and Personal Property*. Pursuant to § 1325(a), secured creditors listed below shall be paid the amount shown as the Amount to be Paid On Secured Claim, with such amount included in the Plan payments. However, if the creditor's proof of claim amount is less than the Amount to be Paid on Secured Claim, then only the proof of claim amount will be paid. Any adequate protection payments are as provided in Section (C)(1) above. If a creditor fails to file a secured claim or files a wholly unsecured claim, the debtor may delete the proposed payment of a secured claim in the order confirming plan.

| Creditor & Property Description | Debt Amount | Value of Collateral and Valuation Method | Amount to be Paid On Secured Claim | Interest Rate |
|---|---|---|---|---|
| HARLEY DAVIDSON<br>2005 HARLEY DAVIDSON FXSTI (SOFTTAIL)<br>MILEAGE: 40,000 | 7,068.00 | 5,500.00<br>WWW.NADA.COM | 5,500.00 | 5.25 |

☒ See Section (J), Varying Provisions.

(6) *Priority, Unsecured Claims*. All allowed claims entitled to priority treatment under § 507 shall be paid in full pro rata.

(a) Unsecured Domestic Support Obligations. The Debtor shall remain current on such obligations that come due after filing the petition. Unpaid obligations before the petition date to be cured in the plan payments.

| Creditor | Estimated Arrearage Amount | Arrearage Through Date |
|---|---|---|
| -NONE- | | |

(b) Other unsecured priority claims.

| Creditor | Type of Priority Debt | Estimated Amount |
|---|---|---|
| ARIZONA DEPARTMENT OF REVENUE | Taxes and certain other debts | 0.00 |
| INTERNAL REVENUE SERVICE | Taxes and certain other debts | 0.00 |

☐ See Section (J), Varying Provisions.

(7) *Codebtor Claims*. The following codebtor claim is to be paid per the allowed claim, pro rata before other unsecured, nonpriority claims.

| Creditor | Codebtor Name | Estimated Debt Amount |
|---|---|---|
| -NONE- | | |

☐ See Section (J), Varying Provisions.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy

Case 2:10-bk-39484-DPC   Doc 4   Filed 12/10/10   Entered 12/10/10 10:45:51   Desc
Main Document    Page 3 of 11

(8) *Unsecured Nonpriority Claims.* Allowed unsecured, nonpriority claims shall be paid pro rata the balance of payments under the Plan.

☐ See Section (J), Varying Provisions.

(D) **Lien Retention.** Secured creditors shall retain their liens until payment of the underlying debt determined under nonbankruptcy law or upon discharge, whichever occurs first. Federal tax liens shall continue to attach to property excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) until the Internal Revenue Service is required to release the liens in accordance with non bankruptcy law.

☐ See Section (J), Varying Provisions.

(E) **Surrendered Property.** Debtor surrenders the following property to the secured creditor. Upon confirmation of this Plan or except as otherwise ordered by the Court, bankruptcy stays are lifted as to the collateral to be surrendered. Any secured claim filed by such creditor shall receive no distribution until the creditor files an allowed unsecured claim or an amended proof of claim that reflects any deficiency balance remaining on the claim. *Should the creditor fail to file an amended unsecured claim consistent with this provision, the Trustee need not make any distributions to that creditor.*

| Creditor | Property Being Surrendered |
|---|---|
| **-NONE-** | |

(F) **Attorney Application for Payment of Attorney Fees.** Counsel for the Debtor has received a prepetition retainer of $ **4,000.00**, to be applied against fees and costs incurred. Fees and costs exceeding the retainer shall be paid from funds held by the Chapter 13 Trustee as an administrative expense. Counsel will be paid as selected in paragraph (1) or (2) below:

(1) **Flat Fee.** Counsel for the Debtor has agreed to a total sum of $ **4,000.00** to represent the Debtor. Counsel has agreed to perform the following services through confirmation of the plan:

☐ All of the below, except Additional Services.
☒ Review of financial documents and information.
☒ Consultation, planning, and advice, including office visits and telephone communications.
☒ Preparation of Petition, Schedules, Statement of Financial Affairs, Master Mailing List.
☒ Preparation and filing of Chapter 13 Plan, Plan Analysis, and any necessary amendments.
☒ Attendance at the § 341 meeting of creditors.
☒ Resolution of creditor objections and Trustee recommendations, and attendance at hearings.
☒ Reviewing and analyzing creditor claims for potential objections, and attendance at hearings.
☒ Responding to motions to dismiss, and attendance at hearings.
☒ Responding to motions for relief from the automatic stay, and attendance at hearings.
☒ Drafting and mailing of any necessary correspondence.
☒ Preparation of proposed order confirming the plan.
☐ Representation in any adversary proceedings.
☒ Representation regarding the prefiling credit briefing and post-filing education course.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - www.bestcase.com
Best Case Bankruptcy

Additional Services. Counsel for the Debtor has agreed to charge a flat fee for the following additional services provided to the Debtor after confirmation of the plan:

☒ Preparation and filing of Modified Plan $ **750.00** .
☒ Preparation and filing of motion for moratorium $ **750.00** .
☒ Responding to motion to dismiss, and attendance at hearings $ **750.00** .
☐ Defending motion for relief from the automatic stay or adversary proceeding $__.
☒ Preparation and filing of any motion to sell property $ **750.00** .
☒ Other

**Responding to complex motions for relief from the automatic stay and attendance at contested or evidentiary hearings thereon. Fee $750.00.**

**Preparing and filing Motions to Incur Debt and attendance at hearings thereon. Fee $750.00.**

**Prosecuting avoidance of voluntary lien secured by real property and attendance at hearings thereon. Fee $1,000.00.**

All other additional services will be billed at the rate of $ **265.00** per hour for attorney time and $ **100.00** per hour for paralegal time. Counsel will file and notice a separate fee application detailing the additional fees and costs requested. Counsel will include *all* time expended in the case in the separate fee application.

☐ See Section (J), Varying Provisions.

(2) **Hourly Fees.** For hourly fees to be paid as an administrative expense, counsel must file and notice a separate fee application detailing the additional fees and costs requested. The application must include all time expended in the case.

Counsel has agreed to represent the Debtor for all services related to the Chapter 13 bankruptcy to be billed at the rate of $__ per hour for attorney time and $__ per hour for paralegal time.

☐ See Section (J), Varying Provisions.

(G) **Vesting.** Property of the estate shall vest in the Debtor upon confirmation of the Plan. The following property shall not revest in the Debtor upon confirmation: *[Describe or state none]*

**-NONE-**

☐ See Section (J), Varying Provisions.

(H) **Tax Returns.** While the case is pending, the Debtor shall provide to the Trustee a copy of any post-petition tax return within thirty days after filing the return with the tax agency. The Debtor has filed all tax returns for all taxable periods during the four-year period ending on the petition date, except: *[not applicable or describe unfiled returns]*.

**N/A**

(I) **Funding Shortfall.** Debtor will cure any funding shortfall before the Plan is deemed completed.

(J) **Varying Provisions.** The Debtor submits the following provisions that vary from the Local Plan Form, Sections (A) through (H):

(C) Payments disbursed by the Trustee shall be paid in the following order: (a) first to administrative claims, including adequate protection; (b) then to secured claims, paid pro-rata; (c) then to priority unsecured claims, paid pro-rata; (d) then to general unsecured claims, paid pro-rata.

(C) If a secured creditor does not file a timely objection to confirmation of the Plan then it is deemed to have accepted treatment of its claim under the plan, irrespective of the filing of a secured proof of claim. 11 U.S.C. §1325(a)(5)(A). In the event that a priority unsecured creditor fails to file a priority unsecured claim before confirmation or files a general unsecured claim, the Debtor may delete the proposed payment of the priority unsecured claim in the order confirming the Plan with no additional notice.

(C)(4) Maricopa County Treasurer: Notwithstanding the Plan provision that "[p]repetition arrearages shall be cured through the Trustee," no funds shall be paid to the Maricopa County Treasurer through Plan by the Trustee, and any and all pre-petition and post-petition accrued and accruing real property taxes, including any applicable interest, shall be paid direct by the Debtors to the creditor outside of this Plan.

(C)(4) GB HOME EQUITY, LLC: This creditor, or its successors in interest and/or assigns including but not limited to GB HOME EQUITY, LLC, holds a voluntary lien, also called a Deed of Trust, against the Debtors' real property described below, and such lien is recorded in the Office of the Maricopa County Recorder, in the State of Arizona, at record number 2005-0946126. The value of the subject real property is $151,000.00 and was valued in accordance with that certain valuation obtained from the Licensed Real Estate Appraisal by Lance Billingsly of Billingsly Appraisal Group. A true and correct copy of the foregoing valuation shall be filed concurrently with the Plan and is incorporated herein by reference. The value of the subject real property is insufficient to secure all prior perfected liens against the subject real property and, as a direct result, no equity exists in the subject real property to secure this creditor's lien. Therefore, the Debtors shall file an adversary proceeding avoiding the lien of this creditor. As a result of the avoidance of the lien of this creditor, this creditor shall not be paid through the Plan as a secured creditor, or direct by the Debtors, rather any filed claim of this creditor for this debt shall be classified as a general unsecured claim and paid in accordance with Section (C)(8) of the Plan.

Assessor's Parcel Number: 501-39-317

Street Address: 12666 NORTH 150TH LANE, SURPRISE, AZ 85379

Legal Description: LOT 252, OF RANCHO GABRIELA PHASE 1, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 584 OF MAPS, PAGE 16.

(C)(5) Interest Rate: The interest rate to be paid on all secured claims listed below, unless otherwise stated, shall be the sum of the prime rate as stated below and the risk adjustment factor as stated below. The current prime rate of interest as of the date the initial Plan is filed in this case, as reported in the Wall Street Journal (in accordance with information reviewed at http://www.bankrate.com), is 3.25%. The risk adjustment factor under this Plan is 2.0%. The factors taken into account to determine the risk factor include the status of the debt at filing (see below), prior bankruptcy filings (see the Voluntary Petition filed in this case), Plan feasibility, the nature of the security and the liquidity of same, and equal treatment of similarly situated creditors.

GB HOME EQUITY, LLC: Debtor(s) intend to avoid lien under 522(f)(1) or 522(f)(2).

(K) **Plan Summary.** If there is a discrepancy between paragraphs (A) - (J) and paragraphs (K) - (M), then the provisions of paragraphs (A) - (J) and the confirmed plan control.

| | | |
|---|---|---|
| (1) | Trustee's compensation (10% of plan payments) | $ 3,518.40 |
| (2) | Ongoing post-petition mortgage payments | $ 0.00 |
| (3) | Administrative expenses and claims | $ 0.00 |
| (4) | Priority claims | $ 0.00 |
| (5) | Prepetition mortgage or lease arrears, or amount to cure defaults, including interest | $ 3,000.00 |
| (6) | Secured personal property claims, including interest | $ 5,693.26 |
| (7) | Amount to unsecured nonpriority claims | $ 26,488.34 |
| (8) | **Total of plan payments** | $ 38,700.00 |

(L) **Section 1325 Analysis.**

(1) *Best Interest of Creditors Test:*

| | | |
|---|---|---|
| (a) | Value of Debtor's interest in nonexempt property | $ 1,255.00 |
| (b) | Plus: Value of property recoverable under avoiding powers | $ 0.00 |
| (c) | Less: Estimated Chapter 7 administrative expenses | $ 313.75 |
| (d) | Less: Amount to unsecured, priority creditors | $ 0.00 |
| (e) | **Equals: Estimated amount payable to unsecured, nonpriority claims if Debtor filed Chapter 7** | $ 941.25 |

Paragraph (2) to be completed by debtors whose current monthly income exceeds the state's median income.

(2) *Section 1325(b) Analysis:*

| | | |
|---|---|---|
| (a) | Monthly disposable income under § 1325(b)(2), Form B22C, Statement of Current Monthly Income | $ -243.71 |
| (b) | Applicable commitment period | $ 60 |
| (c) | Section 1325(b)(2) monthly disposable income amount multiplied by 60 | $ -14,622.60 |
| (M) | **Estimated Amount to Unsecured Nonpriority Creditors Under Plan** | $ 26,488.34 |

Dated: **December 9, 2010**

/s/ ERR - 7690
**EARL R. RINGLEY**
Debtor

/s/ JLR - 6930
**JESSIE L. RINGLEY**
Debtor

/s/ RDB - 005224
**ROBERT D. BEUCLER 005224**
Attorney for Debtor
**PHILLIPS & ASSOCIATES
20 EAST THOMAS ROAD, 26TH FLOOR
PHOENIX, AZ 85012**

*rev. 12/09*

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. PA120110

## Property Description

| Field | Value |
|---|---|
| Property Address | 12666 North 150th Lane |
| City | Surprise |
| State | AZ |
| Zip Code | 85379-6916 |
| Legal Description | Lot 252, Rancho Gabriella Phase 1 (MCR 0584-16) |
| County | Maricopa |
| Assessor's Parcel No. | 501-39-317 |
| Tax Year | 2010 |
| R.E. Taxes $ | 1,300.34 |
| Special Assessments $ | None |
| Borrower | Ringley, Earl & Jessie |
| Current Owner | Ringley, Earl & Jessie |
| Occupant | ☒ Owner ☐ Tenant ☐ Vacant |
| Property rights appraised | ☒ Fee Simple ☐ Leasehold |
| Project Type | ☒ PUD ☐ Condominium (HUD/VA only) |
| HOA $ | 50.00 /Mo. |
| Neighborhood or Project Name | Rancho Gabriella |
| Map Reference | Page 101/Sec 17 |
| Census Tract | 0610.07 |
| Sale Price $ | N/A |
| Date of Sale | N/A |
| Description and $ amount of loan charges/concessions to be paid by seller | N/A |
| Lender/Client | Private Party |
| Address | 12666 North 150th Lane, Surprise, AZ 85379 |
| Appraiser | Lance D. Billingsley |
| Address | 6511 West Chester Road, Glendale, AZ 85310 |

### Neighborhood

| | | | |
|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | Predominant occupancy | ☒ Owner 85 ☐ Tenant 10 ☐ Vacant (0-5%) |
| Built up | ☐ Over 75% ☒ 25-75% ☐ Under 25% | Single family housing PRICE $(000) / AGE (yrs) | 20+ Low New / 700+ High 60+ / Predominant 175+- / 5-10 |
| Growth rate | ☐ Rapid ☒ Stable ☐ Slow | Present land use % | One family 70 / 2-4 family 2 / Multi-family 3 / Commercial 5 / Other 20 |
| Property values | ☐ Increasing ☒ Stable ☐ Declining | Land use change | ☒ Not likely ☐ Likely ☐ In process |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply | | |
| Marketing time | ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: The neighborhood boundaries are considered to be Bell Road to the North, 111th Avenue to the East, Northern Avenue to the South and Sarival Road to the West.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The immediate neighborhood is comprised of average to good quality tract, custom and semi-custom homes. These properties generally average to good maintenance. Community services, schools and shopping are conveniently located. Freeway access is approximately 8 miles East to the Loop 101.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time — such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): General market conditions are average. Typical financing in this market segment includes but is not limited to cash, FHA, VA and conventional financing. Sellers typically pay 0-6% of the loan amount towards closing costs. This is not considered to affect sales price. **See additional comments**

Project Information for PUDs (if applicable) -- Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☒ No
Approximate total number of units in the subject project: N/A    Approximate total number of units for sale in the subject project: N/A
Describe common elements and recreational facilities: N/A

### Site

| Field | Value |
|---|---|
| Dimensions | Irregular (See Plat) |
| Topography | Leveled With Slight Crown |
| Site area | 10,173+- Sq. Ft. |
| Size | Conforming/Typical |
| Corner Lot | ☐ Yes ☒ No |
| Shape | Irregular (See Plat) |
| Specific zoning classification and description | PAD - Planned Area Development |
| Drainage | Adequate |
| Zoning compliance | ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning |
| View | Typical of Area |
| Highest & best use as improved | ☒ Present use ☐ Other use (explain) |
| Landscaping | Average |

| Utilities | Public | Other | Off-site improvements | Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Asphalt | ☒ | ☐ |
| Gas | ☐ | | Curb/gutter | Concrete | ☒ | ☐ |
| Water | ☒ | | Sidewalk | Concrete | ☒ | ☐ |
| Sanitary sewer | ☒ | | Street lights | Overhead, Electric | ☒ | ☐ |
| Storm sewer | ☒ | | Alley | None | | |

Driveway Surface: Poured Concrete
Apparent easements: Typical Public Utilities
FEMA Special Flood Hazard Area: ☐ Yes ☒ No
FEMA Zone: X500   Map Date: 09/30/05
FEMA Map No. 04013C1585H

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): There are no adverse easements, encroachments or environmental conditions noted. The subject is located in an area of primarily residential use. The current highest and best use is considered as appraised.

### Description of Improvements

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | One | Foundation | Concrete | Slab | Concrete | Area Sq. Ft. | No Bsmnt | Roof | N/A |
| No. of Stories | Two | Exterior Walls | Stucco/Block | Crawl Space | None | % Finished | N/A | Ceiling | * |
| Type (Det./Att.) | Detached | Roof Surface | Concrete Tile | Basement | None | Ceiling | N/A | Walls | * |
| Design (Style) | Mlt Lvl/Avg | Gutters & Dwnspts. | Adeq Overhng | Sump Pump | None | Walls | N/A | Floor | N/A |
| Existing/Proposed | Existing | Window Type | Dual Pane | Dampness | None Noted | Floor | N/A | None | N/A |
| Age (Yrs.) | 2003 | Storm/Screens | Yes | Settlement | None Noted | Outside Entry | N/A | Unknown | N/A |
| Effective Age (Yrs.) | 4-7 yrs | Manufactured House | No | Infestation | None Noted | | | *Assume Adequate | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | No Basement |
| Level 1 | Entry | 1 | 1 | 1 | 1 | | | | 0.5 | 1 | Breakfast | 1,519 |
| Level 2 | | | | | | | | 4 | 2.0 | | Loft | 1,481 |

Finished area above grade contains: 8 Rooms; 4 Bedroom(s); 2.5 Bath(s); 3,000 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Tile/Carpet/Avg | Type | FWA | Refrigerator | ☐ | None | ☒ | Fireplace(s) # None | ☐ | None | ☐ |
| Walls | Drywall/Avg | Fuel | Electric | Range/Oven | ☒ | Stairs | ☐ | Patio Covered | ☒ | Garage | # of cars |
| Trim/Finish | Typical/Avg | Condition | Average | Disposal | ☒ | Drop Stair | ☐ | Deck None | ☐ | Attached | 2 Car Gar. |
| Bath Floor | Tile/Avg | COOLING | | Dishwasher | ☒ | Scuttle | ☒ | Porch Cov. Entry | ☒ | Detached | N/A |
| Bath Wainscot | Cult Marble/Avg | Central | Central | Fan/Hood | ☒ | Floor | ☐ | Fence Block | ☒ | Built-in | N/A |
| Doors | Wood/Avg | Other | N/A | Microwave | ☒ | Heated | ☐ | Pool Pool/Decking | ☒ | Carport | N/A |
| | | Condition | Average | Washer/Dryer | ☒ | Finished | ☐ | | | Driveway | Con. Slab |

Additional features (special energy efficient items, etc.): **See additional comments**

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: There are no inadequacies noted. The plumbing, heating, cooling and utilities are on and appear to be in working order. The typical buyer in this market is not willing to pay full price for a swimming pool/decking. This is treated as functional obsolescence and is addressed in the Market Approach.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: There are no adverse environmental conditions noted. It should be noted the appraiser is not considered an expert in this field.

Freddie Mac Form 70 6/93    PAGE 1 OF 2    Fannie Mae Form 1004 6/93
Form UA2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# UNIFORM RESIDENTIAL APPRAISAL REPORT   File No. PA120110

## Valuation Section

| | |
|---|---|
| ESTIMATED SITE VALUE ............................................. = $ _____ | Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): See Cost Approach Comments |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | |
| Dwelling  2,935  Sq. Ft. @ $ _____ = $ _____ | **Sketch dimensions are approximate.** |
| _____ Sq. Ft. @ $ _____ = _____ | |
| Garage/Carport  468  Sq. Ft. @ $ _____ = _____ | |
| Total Estimated Cost New ............................. = $ _____ | |
| Less    Physical    Functional    External | |
| Depreciation    |    |    = $ _____ | |
| Depreciated Value of Improvements ............................ = $ _____ | |
| "As-is" Value of Site Improvements ............................ = $ _____ | |
| INDICATED VALUE BY COST APPROACH ......................... = $ _____ | |

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 12666 North 150th Lane  501-39-317 | 15027 W. Columbine Drive  501-39-370 | | 12313 North 147th Drive  501-39-542 | | 12576 North 150th Lane  501-39-325 | |
| Proximity to Subject | | 0.18 Mile South | | 0.54 Mile Southeast | | 0.09 Mile South | |
| Sales Price | $ N/A | $ 160,000 | | $ 135,000 | | $ 164,900 | |
| Price/Gross Living Area | $ | $ 54.51 | | $ 53.09 | | $ 49.08 | |
| Data and/or Verification Source | Public Records Inspection | Doc #10993124/Pub. Rec MLS #4434095/29 DOM | | Doc #104413903/Pub. Rec MLS #4413903/77DOM | | Doc #101028049/Pub. Rec MLS #4430305/80 DOM | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. |
| Sales or Financing Concessions | | Conventional  None Noted | | FHA  3 Pts Pd By Slr | | Conventional  None Noted | |
| Date of Sale/Time | | 11/12/2010 | | 09/29/2010 | | 11/23/2010 | |
| Location | Average | Average | | Prox. Traffic | +5,000 | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10,173+-Sq. Ft. | 8,670+-Sq. Ft. | 0 | 8,484+-Sq Ft | 0 | 8,960+-Sq Ft | 0 |
| View | Typ. For Area | Typ. For Area | | Typ. For Area | | Typ. For Area | |
| Design and Appeal | Multi-Lvl/Avg | Multi-Lvl/Avg | | Multi-Lvl/Avg | | Multi-Lvl/Avg | 0 |
| Quality of Construction | Avg/Tile Roof | Avg/Tile Roof | | Avg/Tile Roof | | Avg/Tile Roof | |
| Age | 2003 | 2004 | 0 | 2003 | 0 | 2004 | 0 |
| Condition | Average | Updated/Good | -10,000 | Average | | Average | |
| Above Grade Room Count | Total/Bdrms/Baths  8 / 4 / 2.5 | Total/Bdrms/Baths  8 / 4 / 2.5 | | Total/Bdrms/Baths  7 / 4 / 2.5 | | Total/Bdrms/Baths  9 / 4 / 2.5 | |
| Gross Living Area | 2,935 Sq. Ft. | 2,935 Sq. Ft. | Same Plan | 2,543 Sq. Ft. | +11,800 | 3,360 Sq. Ft. | -12,800 |
| Basement & Finished Rooms Below Grade | No Basement | No Basement | | No Basement | | No Basement | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central A/C | Central A/C | | Central A/C | | Central A/C | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch, Patio, Deck, Fireplace(s), etc. | Covered Patio  No Fireplace | Covered Patio  No Fireplace | | Cvd Pat/Deck  No Fireplace | -5,000 | Covered Patio  No Fireplace | |
| Fence, Pool, etc. | Pool/Decking | Pool/Decking | 0 | No Pool | +16,000 | Pool/Decking | 0 |
| Other | | | | | | | |
| Net Adj. (total) | | [ ]+ [X]- $ | -10,000 | [X]+ [ ]- $ | 27,800 | [ ]+ [X]- $ | -12,800 |
| Adjusted Sales Price of Comparable | | $ | 150,000 | $ | 162,800 | $ | 152,100 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): Please See Additional Comments
Property History: Per Arizona MLS records, the subject has not been listed in the past year. Per Maricopa County public records, the subject has not sold in the past 3 years. The subject property last transferred as a new home purchase 03/01/2004 for $221,753.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | See Above For Subject's Sales History | No Prior Sale Found In The Previous 12 Months. **Per Public Records** | 07/19/10 (Bank Buy-Back) 219,823 **Per Public Records** | 07/14/10 (Bank Buy-Back) 259,536 **Per Public Records** |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:

INDICATED VALUE BY SALES COMPARISON APPROACH ................................................................................ $ 151,000
INDICATED VALUE BY INCOME APPROACH (If Applicable)   Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ N/A
This appraisal is made [X] "as is"   [ ] subject to the repairs, alterations, inspections or conditions listed below   [ ] subject to completion per plans & specifications.
Conditions of Appraisal: **This report is prepared for a private party, to determine value only. No other use or user is intended.**
**See Additional Comments**
Final Reconciliation: See Cost Approach comments. The Market Approach is most relied upon to estimate value. The Income Approach was not considered applicable as the subject's market is not investor oriented.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised  06/93 ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF   December 7, 2010
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE   $ 151,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature _(signed)_ | Signature | [ ] Did [ ] Did Not Inspect Property |
| Name Lance D. Billingsley | Name | |
| Date Report Signed December 07, 2010 | Date Report Signed | |
| State Certification # _____   State | State Certification # _____   State | |
| Or State License # 11294   State AZ | Or State License # | State |

Freddie Mac Form 70 6/93   PAGE 2 OF 2   Fannie Mae Form 1004 6-93
Form UA2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# UNIFORM RESIDENTIAL APPRAISAL REPORT
## MARKET DATA ANALYSIS

These recent sales of properties are most similar and proximate to subject and have been considered in the market analysis. The description includes a dollar adjustment, reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of the subject. If a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject.

| ITEM | SUBJECT | COMPARABLE NO. | | COMPARABLE NO. | | COMPARABLE NO. | |
|---|---|---|---|---|---|---|---|
| Address | 12666 North 150th Lane 501-39-317 | 14933 W. Columbine Drive 501-39-379 | | 14893 W. Larkspur Drive 501-39-665 | | | |
| Proximity to Subject | | 0.24 Mile Southeast | | 0.26 Mile Southeast | | | |
| Sales Price | $ N/A | $ | 139,900 | $ | 139,900 | $ | |
| Price/Gross Living Area | $ ⌀ | $ 47.67 ⌀ | | $ 51.70 ⌀ | | $ ⌀ | |
| Data and/or Verification Sources | Public Records Inspection | Public Records/MLS MLS #4469504/67 DOM | | Public Records/MLS MLS #4459042/78 DOM | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. |
| Sales or Financing Concessions | | Active (-2%) N/A | -2,800 | Pending (-2%) N/A | +2,800 | | |
| Date of Sale/Time | | N/A | | N/A | | | |
| Location | Average | Average | | Average | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 10,173+-Sq. Ft. | 8,753+-Sq. Ft. | 0 | 8,230+-Sq. Ft. | 0 | | |
| View | Typ. For Area | Common Area | -2,000 | Common Area | -2,000 | | |
| Design and Appeal | Multi-Lvl/Avg | Multi-Lvl/Avg | | Multi-Lvl/Avg | | | |
| Quality of Construction | Avg/Tile Roof | Avg/Tile Roof | | Avg/Tile Roof | | | |
| Age | 2003 | 2004 | 0 | 2003 | 0 | | |
| Condition | Average | Average | | Average | | | |
| Above Grade Room Count | Total: 8 Bdrms: 4 Baths: 2.5 | Total: 8 Bdrms: 4 Baths: 2.5 | | Total: 7 Bdrms: 4 Baths: 2.5 | | Total: Bdrms: Baths: | |
| Gross Living Area | 2,935 Sq. Ft. | 2,935 Sq. Ft. | Same Plan | 2,706 Sq. Ft. | +6,900 | Sq. Ft. | |
| Basement & Finished Rooms Below Grade | No Basement | No Basement | | No Basement | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | Central A/C | Central A/C | | Central A/C | | | |
| Energy Efficient Items | Standard | Standard | | Standard | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | | |
| Porch, Patio, Deck, Fireplace(s), etc. | Covered Patio No Fireplace | Covered Patio No Fireplace | | Covered Patio No Fireplace | | | |
| Fence, Pool, etc. | Pool/Decking | No Pool | +16,000 | Pool/Decking | 0 | | |
| Other | | | | | | | |
| Net Adj. (total) | | ☒ + ☐ - $ | 11,200 | ☒ + ☐ - $ | 7,700 | ☐ + ☐ - $ | |
| Adjusted Sales Price of Comparable | | $ | 151,100 | | 147,600 | $ | |
| Date, Price and Data Source for prior sales within year of appraisal | See Above, For Subject's Sales History | 09/15/10 (Bank Buy-Back) 141,525 **Per Public Records** | | 08/25/10 (Bank Buy-Back) 232,821 **Per Public Records** | | | |

Comments:

Market Data Analysis 6-93

Form UA2.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Market Conditions Addendum to the Appraisal Report

File No. PA120110

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | | | |
|---|---|---|---|---|
| Property Address | 12666 North 150th Lane | City Surprise | State AZ | ZIP Code 85379-6916 |
| Borrower | Ringley, Earl & Jessie | | | |

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 33 | 20 | 12 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 5.50 | 6.67 | 4.00 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Total # of Comparable Active Listings | 16 | 17 | 23 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 2.9 | 2.5 | 5.8 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 155,000 | 161,700 | 155,400 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Median Comparable Sales Days on Market | 40 | 71 | 37 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | 157,950 | 155,000 | 173,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 112 | 133 | 74 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 100% | 99% | 98% | ☐ Increasing | ☐ Stable | ☒ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☒ Yes | ☐ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). Information regarding seller concession trends is not typically available through MLS or public records. During atypical housing and economic periods, market participants will offer various concessions to stimulate sales activity. This is true with the current market dynamics.

Are foreclosure sales (REO sales) a factor in the market? ☒ Yes ☐ No  If yes, explain (including the trends in listings and sales of foreclosed properties).
Foreclosures are, generally, a factor in any market. With the current down market, foreclosures will typically contribute to lower prices as they will commonly be listed at the lower end of a neighborhood market's range in order to stimulate activity.

Cite data sources for above information. Per ARMLS/flexmls.com - Public Records: The information in the 1004MC is comprised of homes listed 2,400 - 3,400 square feet, multi-level homes built from 1990 - 2010.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
The above information is obtained through MLS data as this is the most "searchable" with respect to a neighborhood and/or within defined neighborhood boundaries. This data, however, can be unreliable at times while it may not be an accurate reflection of all property sales/closing information. In addition, MLS does not typically include many NEW home listing or FOR SALE BY OWNER listings. The marketing process for new home construction is typically different than the resale market.

If the subject is a unit in a condominium or cooperative project, complete the following: Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No  If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| | | | |
|---|---|---|---|
| Signature | | Signature | |
| Appraiser Name | Lance D. Billingsley | Supervisory Appraiser Name | |
| Company Name | Billingsley Appraisal Services | Company Name | |
| Company Address | 6511 West Chester Road Glendale, AZ 85310 | Company Address | |
| State License/Certification # | 11294  State AZ | State License/Certification # | State |
| Email Address | BAServices@live.com | Email Address | |

Freddie Mac Form 71 March 2009 — Page 1 of 1 — Fannie Mae Form 1004MC March 2009

Form 1004MC2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE